**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BRITTANY WOODFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:24-cv-00973-MAB** |
| | ) | |
| **DG RETAIL, LLC D/B/A DOLLAR GENERAL,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment filed by Defendant DG Retail, LLC (Doc. 51; *see also* Doc. 52). For the reasons set forth below, Defendant's motion for summary judgment (Doc. 51) is granted.

## PROCEDURAL BACKGROUND

Plaintiff Brittany Woodford ("Woodford") filed this case in March 2024 seeking relief against Defendant DG Retail, LLC ("Dollar General") for alleged violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Illinois Wage Payment and Collection Act ("IWCPA") (*see* Doc. 1). More specifically, Woodford raised the following claims in her Complaint: disability-based discrimination and harassment under the ADA (Counts 1 and 2), sex-based harassment and discrimination under Title VII (Counts 3 and 4), retaliation under Title VII (Count 5), and failure to pay final compensation under the IWCPA (Count 6).

Dollar General filed the instant Motion for Summary Judgment on December 19, 2025 (Doc. 51), and its Memorandum of Law in Support of Summary Judgment on December 20 (Doc. 52). Dollar General's Memorandum of Law was supported by a Statement of Uncontroverted Material Facts (Doc. 52-1) and numerous exhibits (Docs. 51-1 through 51-21). On February 2, 2026, Woodford filed a Response in Opposition to the Motion for Summary Judgment (Doc. 58). Woodford, however, did not file a statement of additional material facts or any supporting exhibits (*Id.*). On February 16, 2026, Dollar General filed a Reply (Doc. 61). On August 7, 2026, the Court Ordered Dollar General to file Woodford's complete deposition transcript because it had failed to include several of the cited pages from the transcript (Doc. 62), and Dollar General promptly complied (Doc. 63; Doc. 63-1).

## EVIDENTIARY DISPUTES

Dollar General's Statement of Undisputed Material Facts contains 75 factual paragraphs, which Woodford admitted to all but 13 of them.[1] For seven of Dollar General's stated facts that Woodford disputed, she indicated she disputed the asserted fact because it was a combination of multiple references that created "ambiguity" and because Dollar General relied on multiple documents (*see* Doc. 58, ¶¶ 5, 24, 29, 33, 38, 49, 54).[2] However, this is simply not sufficient to establish that Dollar General's factual

---

[1] Specifically, Woodford attempted to dispute the following paragraphs: 5, 24, 29, 30, 32, 33, 34, 38, 40, 49, 54, 56, 63.

[2] To the extent Woodford disputed any of these seven facts for inaccurately citing to or mischaracterizing the record (*see, e.g.* Doc. 58, p. 9 ¶ 32, ¶34), the Court has independently reviewed the evidence and finds Woodford's objections to be unfounded.

assertion is untrue or incorrect, especially since Woodford did not cite to any contrary evidence to support her position. Ultimately, she is objecting to format of Dollar General's stated fact and cited evidence, which the Court overrules.

With regard to the other stated facts that Woodford disputed, she either claimed that Dollar General mischaracterized the evidence or that the cited evidence did not support the factual assertion (*see* Doc. 58, ¶¶30, 32, 34, 40, 56, 63). Again here, Woodford did not cite to any evidence that she believed supported her denials. Moreover, the Court has independently reviewed the cited evidence by Dollar General and finds Plaintiff's objections to be unavailing. Accordingly, Woodford has failed to properly dispute Dollar General's factual assertions and its entire statement of facts will be deemed admitted.[3] *See* FED. R. CIV. P. 56(e)(2); SDIL-LR 56.1(b) ("The disputed facts, or parts of facts, shall contain specific citation(s) to the record, including page number(s), upon which the opposing parties relies, where available."); *Murphy v. Caterpillar Inc.*, 140 F.4th 900, 906 (7th Cir. 2025) ("To survive summary judgment, a party must point to specific facts showing that there is a genuine issue for trial."); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010) ("We have routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions.").

[3] A few specific paragraphs are worth noting. Regarding Paragraph 34, there is no dispute that Dollar General has accurately quoted Woodford's deposition testimony and therefore Woodford's issue regarding the reference to CCTV in the factual statement is immaterial (Doc. 58, ¶ 34). Dollar General's citation to support its factual assertion in Paragraph 56 is obviously a typographical error and Woodford did not, nor can it, make any contention that Dollar General did not accurately quote Woodford (*See* Doc. 63, p. 98:3-10). Finally, Woodford takes issue with Dollar General's factual statement in Paragraph 63. In reviewing the cited evidence, the declarations make clear that Mason occasionally told Woodford and other store employees that she "loved them" in a platonic manner, however the reference to Mason supporting store employees does not appear to be supported by the cited evidence and the Court will not rely on it.

## FACTUAL BACKGROUND[4]

Woodford began working at Dollar General store in Brookport, Illinois in October 2022 (SUMF 1; Doc. 52-3, p. 3; Doc. 52-16, p. 1). She was hired as a part-time, temporary Store Clerk beginning on October 12, 2022, by Shawna Mason ("Mason") (SUMF 3; Doc. 52-3, pp. 3; Doc. 52-16, pp. 1; Doc. 63, pp. 70-71). At the time, Mason was the Store Manager at the Brookport Dollar General (SUMF 2; Doc. 52-16, pp. 1). On December 31, 2022, Mason promoted Woodford to part-time Sales Associate with an increase in pay, then promoted her again on February 4, 2023, to part-time Lead Sales Associate, with another increase in pay (SUMF 4-5; Doc. 52-16, p. 1; Doc. 53-3, p. 3; Doc. 63, pp. 86-89).

At some point during her time at Dollar General, Woodford informed Mason that she had ADHD, anxiety, depression, and bipolar disorder (SUMF 8; Doc. 52-15, p. 11). Woodford claims that she also informed her co-workers that she also had a "learning disability" but her co-workers laughed because they all thought she was joking (SUMF 12; Doc. 63-1, pp. 55-56). Throughout her time at Dollar General, Woodford never requested an accommodation or informed her coworkers or supervisors that she required an accommodation to perform her job duties (SUMF 10; Doc. 52-2, p. 84; 52-16, p. 7).

According to Woodford, at some point Mason told her that she only hired her

[4] The factual background is taken largely from Dollar General's Statement of Uncontroverted Facts ("SUMF"). However, the body of Dollar General's brief also included and/or referenced additional facts not contained in its SUMF (*See, e.g.*, Doc. 52, p. 9). Accordingly, the Court has included those additional facts in this factual background, as well as others the Court came across in reviewing the materials, which it believed provided context.

because Woodford had "a pretty face." (Doc. 63, p. 23).[5] Woodford recounted that while working at Dollar General, Mason told her she had a "pretty face" every day, multiple times a day (*Id.*). Woodford also indicated that Mason would frequently comment on Woodford's buttocks and breasts (*Id.* at 105, 117). Woodford further indicated that while she and Mason would stock store inventory in the narrow aisles, Mason would bump into Woodford's buttocks and breasts (*Id.* at 104-106). Woodford also described an instance when Mason told her daughter that Woodford would be her stepmother (*Id.* at 20-21).

There is no indication, however, that prior to November 21, 2023, Woodford informed Mason or anyone at Dollar General that she was being subjected to this behavior (Doc. 52-16, pp. 5). Mason says she occasionally told both male and female employees that she loved them (SUMF 63; Doc. 52-17, pp. 3; Doc. 52-16; pp. 5). On multiple occasions, Woodford told Mason that she was "the best boss ever." (SUMF 7; Doc. 63-1, pp. 26; Doc. 52-16, pp. 2-3).

**A. The Events of November 21, 2023**

On November 21, 2023, Woodford, Mason, and the Assistant Store Manager Savannah Horner watched a Tik Tok video on employee stereotypes in the workplace (SUMF 26; Doc. 63, pp. 91-93; Doc. 52-17, pp. 2). One of the stereotypes was a "lampshade," meaning an employee for whom it "takes a few minutes for the lights to

[5] Notably, this fact and the ensuing facts are not included in Dollar General's Statement of Uncontroverted Material Facts. However, Dollar General discussed these facts in the argument section of their brief (*see e.g.*, Doc. 52, p. 9), and therefore the Court has opted to include these in its factual background.

come on." (SUMF 27; Doc. 52-15, pp. 23-24; Doc. 52-17, pp. 2). Mason joked that she and Woodford were like the lampshade in the video (SUMF 27; Doc. 63, pp. 92; Doc. 52-16, pp. 4-5). According to Mason, the implication of this reference was that she and Woodford have a hard time remembering things (Doc. 52-15, pp. 23-24). Woodford, on the other hand, believed Mason's lampshade comment was implying that she was stupid. (Doc. 63, pp. 92-93). However, Woodford acknowledged that Mason never explicitly called her stupid (SUMF 30; Doc. 63-1, pp. 57).

About thirty minutes to an hour after watching the video together, Woodford went to the cash register to clock out, halfway through her scheduled shift (SUMF 28; Doc. 52-2, pp. 43; Doc. 52-16, pp. 5; Doc. 52-17, p. 2). Mason asked Woodford what was wrong, and Woodford responded, "apparently, I'm stupid," in reference to Mason's lampshade comment (SUMF 29; Doc. 52-16, p. 5). Mason attempted to console Woodford by giving a five to six second "side hug[.]" (SUMF 31; Doc. 52-15, pp. 18-19, Doc. 52-21, pp. 3; Doc. 52-19, pp. 10). As Woodford continued to clock out, Mason touched Woodford's back for at least three seconds (SUMF 32; Doc. 52-19, p. 29; Doc. 52-15, pp. 13-14).

Later that same day, Woodford's fiancé Dustin Boyt ("Boyt") called Dollar General's Employee Response Center ("ERC") to report Mason (SUMF 38; Doc. 63, pp. 128). This was the first Dollar General learned of any sort of complaint from Woodford (SUMF 38; Doc. 52-16, p. 5; Doc. 52-3, pp. 3). The next day, November 22, 2023, Woodford did not show up to her scheduled shift at Dollar General (SUMF 41; Doc. 52-16, pp. 5; Doc. 52-3, pp. 4). Because Woodford left her shift early on November 21 and did not show up for her shift on November 22, Mason updated the store schedule to replace Woodford

and provide coverage for her upcoming shifts (SUMF 42; Doc. 52-3, p. 4; Doc. 52-16, p. 5). At the time Mason replaced Woodford on her scheduled upcoming shifts, she was not aware that Woodford had complained about her to the ERC (SUMF 43; Doc. 52-16 ¶ 23).

On November 22, 2023, Dollar General's Employee Relations Manager, Halle Schuler, in the Human Resources Department initiated an investigation into Woodford's complaint (SUMF 44; Doc. 52-3, p. 4). Donnie Robbins, who was the district manager at the time, was tasked with conducting the investigation at the store level (SUMF 45; Doc. 52-3; Doc. 52-21, p. 2). As part of his investigation, Robbins reviewed Dollar General's CCTV footage, obtained statements from employees, and forwarded the footage and statements to Halle Schuler in HR (SUMF 46; Doc. 52-21). Robbins also asked Woodford to meet with him to discuss her complaint or to submit a written statement detailing her allegations, but Woodford declined both options (SUMF 47; Doc. 52-21, pp. 3-4). On December 13, 2023, Halle Schuler determined that Woodford's allegations of sexual harassment were not substantiated (SUMF 51; Doc. 52-3, p. 6; Doc. 52-21, p. 4). Robbins communicated this result to Woodford the next day (SUMF 52; Doc. 52-21, p. 4). Woodford indicated that she would not return to work if Mason was still employed at the store (SUMF 53; Doc. 52-3, ¶31; Doc. 52-21, ¶23; *see also* Doc. 52-11, p. 2; Doc. 63-1, p. 44). Robbins consulted with Halle Schuler as to options, and on December 18, 2023, Robbins offered Woodford the opportunity to transfer to another Dollar General store approximately ten minutes from the Brookport store (SUMF 54; Doc. 52-3, ¶31; 52-21, ¶24; *see also* Doc. 52-11, p. 1). However, Woodford never responded to Dollar General's offer to transfer to an alternative store location (*Id*). On January 27, 2024, over a month

after last hearing from Woodford, Dollar General processed Woodford's separation of employment as a voluntary job abandonment and indicated she was eligible for rehire (SUMF 57; 52-3, p. 6; 52-21, p.5). Woodford timely received her last paycheck and received pay for all hours she worked at Dollar General (SUMF 60; Doc. 63-1, at 66, 67; Doc. 52-3, pp. 7; Doc. 52-12).

Throughout the course of Woodford's employment, Dollar General maintained an Attendance and Tardiness Policy as part of the Employee Handbook (SUMF 18; Doc. 52-7). Woodford signed the employee handbook, acknowledging she was aware of this policy (Doc. 52-8). Dollar General's Attendance and Tardiness provision provides: "[i]n the event an employee must leave work prior to the completion of his or her work schedule, the employee must notify his or her manager prior to leaving. Walking off the job will be considered job abandonment." (Doc. 52-7, pp. 1).

## DISCUSSION

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the

benefit of conflicting evidence and reasonable inferences, he or she is still required to produce sufficient evidence to establish the essential elements of his or her claims. *See Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

Dollar General argues that it is entitled to summary judgment as to all counts. The Court will address the arguments in the following order: first, the Court will address Woodford's Title VII sex-based discrimination and Title VII retaliation claims; next the Court will consider Woodford's Title VII sex-based harassment claim; then the Court will address Woodford's ADA disability-based discrimination and harassment claims; and finally the Court will analyze the IWCPA failure to pay lost wage claims.

## I. Title VII Sex-Based Discrimination (Count 4) and Retaliation (Count 5)

To succeed on a Title VII claim for discrimination, the plaintiff must show that her employer took an adverse action against her because of a statutorily proscribed factor, in this case sex. *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). *See also Abrego v. Wilkie,* 907 F.3d 1004, 1012 (7th Cir. 2018) ("To succeed on a Title VII claim, the plaintiff-employee must prove three elements: [1] [s]he is a member of a class protected by the statute, [2] that [s]he has been the subject of some form of adverse employment action . . . and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class."). To succeed on a Title VII retaliation claim, the plaintiff must "prove that [s]he engaged in protected activity and suffered an adverse employment action, and there was a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Because Woodford's Title VII sex discrimination and retaliation claims both hinge on whether Dollar General took an adverse employment action against her, the Court will begin its discussion with this element. *See Whittaker v. Northern Illinois University*, 424 F.3d 640, 649 (7th Cir. 2005) (explaining that because the plaintiff failed to establish that an adverse employment action was taken against her, she could not make her claims of sex discrimination or retaliation).

"An adverse employment action is one that significantly alters the terms and conditions of the employee's job . . . ." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Examples include "hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

Here, no reasonable jury could find that Plaintiff suffered an adverse employment action. The undisputed facts show that Woodford left her shift early on November 21, 2023, and did not come to work the following day. Dollar General opened an investigation into Woodford's harassment claim but Woodford refused to participate in the investigation. The investigation determined Woodford's complaint was unsubstantiated. Dollar General asked her when she wanted to come back to work but Woodford refused to return to work at the Brookport store. Dollar General then gave her the option of moving to a nearby store. Crucially, Woodford never responded. Dollar General waited over a month, and still having not heard from Woodford, considered her to have abandoned her job and "accepted her voluntary resignation" (Doc. 52-3, ¶32). Dollar General processed Woodford's separation of employment and indicated she was

eligible for rehire.

Based on these facts, no reasonable jury could conclude anything other than Woodford voluntarily chose not to return to work. That choice does not constitute an adverse employment action. *Whittaker*, 424 F.3d at 647 (explaining that because the plaintiff voluntarily left her job and did not serve her suspension without pay, the plaintiff did not experience an adverse employment action); *Luera v. Heart Ctr. Med. Grp.*, No. 1:07-CV-101, 2008 WL 11504549, at *7 (N.D. Ind. Feb. 8, 2008) (the formal termination of plaintiff after plaintiff's "job abandonment" cannot be considered an "adverse employment action" in plaintiff's retaliation claim). Nor is there any evidence that Woodford suffered any form of economic injury. It is undisputed that Woodford received her last paycheck and received pay for all hours worked at Dollar General. And, in light of the fact that Woodford chose not to return to the Brookport store and declined to respond to Dollar General's offer to place her at an alternative store ten minutes away, there is simply no evidence to demonstrate that the terms and conditions of Woodford's employment were altered in any way. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (noting that, although the "definition of an adverse employment action is generous," an employee "must show some quantitative or qualitative change in the terms or conditions of his employment" or some sort of "real harm").

In her response, Woodford contends that her separation from Dollar General is a complex factual situation, and "job abandonment" oversimplifies that complex factual situation (Doc. 58, pp. 20-21). However, Woodford's argument does not cite to or offer any factual evidence to elaborate on this contention. In fact, Woodford does nothing to

really develop this perfunctory argument. At the summary judgment stage, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. This means that the nonmovant must dispute legally relevant facts that create genuine issues for trial. *Id.* Woodford failed to do so here and likewise failed to sufficiently develop any argument to the contrary. Accordingly, Woodford cannot show she suffered an adverse employment action.[6] Dollar General is entitled to summary judgment on Woodford's Title VII discrimination and retaliation claims.

## II. Title VII Sexual Harassment Claim (Count 3)

To establish a case of sexual harassment under Title VII, a plaintiff "must show that (1) she was subjected to unwelcome harassment, (2) the harassment was based on her sex, (3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and (4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007).

Dollar General argues that Mason's workplace behavior did not rise to a level of severity or pervasiveness to create a hostile or abusive atmosphere. Dollar General further contends that Mason's comments were not unwelcome, nor based on a hostility towards women. Finally, Dollar General argues that it can successfully raise the *Faragher-Ellerth* affirmative defense that the company exercised reasonable care to prevent and

[6] Woodford did not allege or offer any argument that she was constructively discharged, and the Court declines to *sua sponte* consider whether the facts here would amount to a constructive discharge. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.")

correct unlawful harassment. In response to Dollar General's argument, Woodford argues that "reasonable minds could differ on whether Mason's conduct was sufficiently severe or pervasive to create a hostile work environment," and whether Dollar General's actions could reasonably prevent future harassment (Doc. 58, pp. 20-21). Woodford then contends that, under Title VII, supervisors and managers are strictly liable for harassment (*Id.* at 23-24).

**A. Was Harassment Unwelcome?**

Dollar General claims that Mason's purported harassment was not unwelcome because Woodford told Mason several times that she was "the best boss ever," including in one text message. (Doc. 52-16, p. 2-3; Doc. 63-1, pp. 27). However, Woodford's tolerance of Mason's comments does not necessarily mean that Woodford welcomed those comments. *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994) ("Although [Plaintiff] tolerated the conduct for over two years because she feared for her job, [Plaintiff] also indicated that she just wanted the comments to stop."); *Ford v. Steak 'N Shake, Inc.*, No. 17-CV-2099, 2019 WL 13292882, at *6 (C.D. Ill. Apr. 12, 2019) (concluding that the plaintiff riding to work with her harassing boss did not undermine the plaintiff's experience of subjective offense at being subjected to harassing comments). Woodford claims that she did not report comments Mason made because she wanted to keep her job, have a means of taking care of her kids, and the job was close to home (Doc. 63, pp. 26; Doc. 63-1, pp. 5-6). Dollar General did not present evidence to show that Woodford asked for, encouraged, or welcomed Mason's comments. *Kampmier*, 472 F.3d at 940 (finding a genuine issue of fact as to whether the harassing comments were welcomed, even though

the plaintiff occasionally participated in the sexual banter). Accordingly, the Court finds a genuine issue of fact as to whether Mason's behavior was welcome or not to Woodford.

**B. Was Woodford Harassed on the Basis of Sex?**

Dollar General argues that Woodford cannot prove that she was harassed on the basis of her sex. (Doc. 52, pp. 14-16). Dollar General argues that Woodford does not present credible evidence of Mason's homosexuality such that sexual desire motivated the harassment, Mason's comments were not made on the basis of hostility or animosity towards Woodford, and that Mason treated male employees the same way as female employees (*Id.*; Doc. 63-1, pp. 39).

The Supreme Court held that Title VII protects against sex-based harassment, whether that be in the context of same-sex or heterosexual harasser-victim relationships. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998) ("[W]e conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII…"). Proving that the purported harassment occurred because of sex in a same-sex harassment case requires evidence that proves the causation element: that the harassment occurred because of the victim's sex. *Id.* at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion] . . .* because of . . . sex.'"). The Supreme Court in *Oncale* outlined three types of evidence available to parties to prove that the harassment occurred based on the victim's sex: (1) "credible evidence that the harasser was homosexual," (2) if harassment occurs in "such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace," or (3) "direct comparative

evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80-81. The question here is whether there is enough evidence for a reasonable juror to conclude that Mason harassed Woodford on the basis of Woodford's sex.

Woodford claims that Mason was previously married to a woman and Woodford believes that Mason liked the way she looks (Doc. 63-1, pp. 41). Mason, on the other hand, states in her declaration to the Court that she is heterosexual and married to a man (Doc. 52-16, pp. 1). Mason also commented to her daughter that Woodford would be Mason's daughter's stepmother (Doc. 63, pp. 20-21). Interpreting these facts in a light most favorable to Woodford, there is an issue of fact as to whether Mason was motivated by a sexual desire towards Woodford.[7]

**C. Was the Harassment Severe or Pervasive?**

"A plaintiff must show that the alleged harassment was so severe or pervasive that it altered the conditions of his employment." *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401 (7th Cir. 2024). Determining whether the harassment was so severe or pervasive, requires an objective and a subjective test. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). The environment must be one that both a reasonable person and the victim find to be hostile and abusive. *Vill. at Hamilton Pointe*, 102 F.4th at 401. Courts determine the objective reasonableness of

[7] Woodford has not presented evidence showing that Mason was motivated by an animus towards women, nor does Woodford present evidence of similarly situated male employees who were not subjected to Mason's harassing comments.

workplace harassment based on the totality of the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). Those circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. Importantly, the workplace is no longer required to be "hellish" to be actionable under Title VII. *Id.* at 21-22; *Gates v. Board of Education of the City of Chicago*, 916 F.3d 631, 637 (7th Cir. 2019).

Dollar General argues that Mason's workplace behavior was not objectively or subjectively offensive to a reasonable person. But according to Woodford, Mason told her that she had a "pretty face" every day (Doc. 63, pp. 23). Mason commented on her buttocks frequently (*Id.* at 105). Mason physically bumped into her frequently while they were stocking aisles at the store and commented on her appearance (*Id.*). A reasonable juror could construe this type of conduct as pervasive harassing behavior. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (finding that a reasonable jury could conclude that the plaintiff's claims that the harassing comments were made "very often"—at least 18 times in less than a year—was pervasive enough to constitute a hostile work environment.).

The fact that Mason's behavior went beyond comments to include daily physical bumping against Woodford adds to the severity the behavior. *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) ("We have previously recognized that direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment."); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 685 (7th Cir. 2010) ("Perhaps the most heavily emphasized

factor in our cases with whether there was inappropriate touching."). Mason claims that bumping into each other was the result of stocking narrow aisles in the store (Doc. 52-15, pp. 16). Nevertheless, the Court must construe the facts in favor of the Woodford at the summary judgment stage and thus a reasonable juror could conclude that Mason's conduct constituted unwanted, physical touching in the workplace. In the Seventh Circuit, "harassment need not be both severe *and* pervasive to establish a hostile work environment . . . ." *Vill. At Hamilton Pointe*, 102 F.4th at 402. An actionable sexual harassment claim under Title VII can be found when a plaintiff alleges "separate incidents that are not individually severe [but] may trigger liability because they frequently occur." *Nichols v. Michigan City Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014).

For purported sexual harassment to be subjectively offensive, the plaintiff must "in fact . . . perceive [it] to be so." *Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). Woodford testified that Mason's comments about her pretty face caused her to stop wearing make-up to work. Woodford also stated in her deposition that "I always kind of knew in the back of my head but I didn't want it to be that way because my job was so convenient…" (Doc. 63, pp. 21). Woodford's interest in keeping her job does not mean that she was not subjectively offended by Mason's behavior. Interpreting these facts in Woodford's favor, the Court finds a genuine issue of material fact as to whether Mason's behavior was sufficiently severe and pervasive to create a hostile work environment.

**D. Is Dollar General Liable for Mason's Purported Harassment?**

Dollar General's final contention is that it exercised reasonable care to prevent and promptly respond to Mason's allegation of harassment and that it can thus assert and

prevail on the *Farrager-Elerth* affirmative defense. This affirmative defense is derived from the Supreme Court's rulings in *Faragher* and *Ellerth*, which outlined the rules for employer liability when the alleged harassing individual is a supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). If the harasser is the victim's supervisor, and the supervisor's harassment led to a tangible employment action, then the employer is strictly liable for the harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). If the harasser is a supervisor and no tangible employment action was taken against the victim, then the employer can defeat the plaintiff's case, subject to proof by a preponderance of the evidence, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

1. *Whether Mason was a supervisor and whether Woodford suffered a tangible employment action*

The Court's threshold inquiry is whether Mason was Woodford's supervisor for Title VII purposes. A supervisor under Title VII has "the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998). Woodford considered Mason to be her supervisor, and Mason oversaw

Woodford's day-to-day work. But more importantly, Mason initially hired Woodford as a part-time Sales Associate, then promoted Woodford to part-time Lead Sales Associate (Doc. 52-16, pp. 1). And Mason controlled Woodford's hours on the store's schedule (*Id.* at 1-2). Because Mason was able to hire and promote Woodford, the Court will consider Mason a supervisor for Title VII purposes.

The next issue the Court must resolve is whether there was a tangible employment action against Woodford. *Kampmier*, 472 F.3d at 942. A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023) (*quoting Vance v. Ball State University*, 570 U.S. 421, 431 (2013). A "tangible employment action is akin to an adverse employment action, as courts have used the term." *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999). The Court has already determined that Dollar General did not take an adverse employment action against Woodford in the context of her retaliation and discrimination claims. The same logic applies here. Woodford declined to return to work at the Brookport store and when Dollar General offered her the opportunity to transfer to a nearby store, she refused to respond. There is no evidence that this offer of reassignment came with significantly different responsibilities or would have caused a significant change in benefits. In short, it amounted to an offer for a lateral transfer, which cannot be considered a tangible or adverse employment action. *Wallen v. City of Belleville*, No. CIV. 05-735-GPM, 2007 WL 129050, at *2 (S.D. Ill. Jan. 16, 2007) ("The Seventh Circuit has repeatedly held that a lateral

transfer without a loss in benefits does not constitute an adverse employment action.") (internal quotations omitted) (collecting cases). Ultimately, Dollar General determined Woodford voluntarily abandoned her job, which likewise cannot be considered a tangible employment action. *See Trahanas,* 64 F.4th at 853 (plaintiff's "voluntary decision not to return to work or extend leave does not amount to a tangible employment action."). Therefore, Dollar General can raise the *Faragher-Ellerth* affirmative defense.

2. *Assessment of Dollar General's Faragher-Ellerth affirmative defense*

To recap, the *Faragher-Ellerth* affirmative defense allows the employer to avoid liability by showing, by a preponderance of the evidence, that it (a) exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Ellerth*, 524 U.S. at 765; *Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 628 (7th Cir. 2019). Dollar General argues that it exercised reasonable care by having complaint procedures and annual sexual harassment and anti-discrimination training, and that Woodford failed to take advantage of those procedures, including when she failed to participate in Dollar General's HR investigation into her complaint.

Woodford filed her first official report of harassment against Mason with Dollar General's ERC on November 21, 2023 (Doc. 63, pp. 128). Dollar General immediately launched an investigation into Woodford's harassment claims on November 22, 2023 (Doc. 52-3, pp. 4). Woodford successfully called the ERC and has not argued that the process made it difficult for her to file her complaint with upper management, showing

that Dollar General's anti-harassment policy was effective in practice. *Gentry*, 238 F.3d at 847 (7th Cir. 2001) ("[A] sexual harassment policy must provide for 'effective grievance mechanisms.'"). In her deposition, Woodford stated that she understood the various avenues of reporting that were available to her during her employment at Dollar General (Doc. 63, pp. 56). *Estate of Harris v. City of Milwaukee*, 141 F.4th 858, 867 (7th Cir. 2025) (finding that the city met its burden of having an effective anti-harassment policy, in part because the policy outlined the avenues for reporting). Woodford was also able to make a report to someone other than the subject of her allegations (Mason).

To determine whether Dollar General exercised reasonable care to prevent and promptly correct sexually harassing behavior, the employer must know about the harassing behavior, but "the law does not require an employer to do more than promote general anti-harassment policies and training to ensure compliance with Title VII." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 507 (7th Cir. 2004) (*overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). The record contains evidence that Dollar General took reasonable action to investigate and remedy Woodford's harassment complaint once Dollar General received Woodford's complaint. Just under one month after Woodford's initial call to Dollar General's ERC, on December 13, 2023, Dollar General completed its investigation and determined Woodford's complaint was unsubstantiated (Doc. 52-3, pp. 6; Doc. 52-21, pp. 4). Dollar General took Woodford's complaint seriously by interviewing numerous employees including Mason, and attempting to interview Woodford (Doc. 52-19, pp. 18, 26; Doc. 52-21, pp. 3; Doc. 52-3, pp. 5). *Estate of Harris*, 141 F.4th at 867 (finding that the city's anti-harassment policy was

effective in practice because the city immediately underwent an investigation and began interviewing witnesses.).

Throughout Woodford's year of work, Dollar General maintained a current Anti-Harassment and Discrimination Policy (Doc. 52-4). Dollar General also maintained an Open Door Policy that allowed Dollar General employees to discuss concerns with managers (Doc. 52-5). Woodford acknowledges that she knew about these programs and received training on sexual harassment, anti-discrimination, and utilizing Dollar General's Open Door Policy (Doc. 63, pp. 68-70). *See also Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 569 (7th Cir. 2001) (finding that because the employer lacked knowledge of the manager's purported harassment, and because the employer maintained general policies and training on Title VII, the employer was not subject to liability for the manager's harassing behavior.). Accordingly, Dollar General has shown that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior.

Moreover, Woodford declined to avail herself of any of Dollar General's procedures until she left work on November 21, 2023, at which point she had been experiencing Mason's harassment for approximately an entire year. As previously noted, Woodford understood the various avenues of reporting that were available to her during her employment as well as Dollar General's Anti-Harassment and Open Door Policy. "[D]emonstrating a plaintiff failed to use the provided reporting procedures will normally suffice to satisfy the employer's burden under the second element of the [*Farragher-Ellerth*] defense." *Hunt*, 931 F.3d at 631 (internal quotations omitted). Again, upon learning of Woodford's complaint, Dollar General immediately launched an

investigation. Accordingly, Woodford's approximately one year delay in failing to take preventive or corrective opportunities to report Mason's conduct amounts to an unreasonable delay. *See Hunt* 931 F.3d at 631 (affirming district court's decision to grant summary judgment under the *Farragher-Ellerth* affirmative defense and finding that employee's four-month delay in utilizing the reporting systems implemented by her employer amounts to an unreasonable delay); *Jackson v. Cty. of Racine*, 474 F.3d 493, 502 (7th Cir. 2007) (holding it was unreasonable for employee to wait four months before reporting sexual harassment to her employer); *Roby v. CWI, Inc*., 579 F.3d 779, 786 (7th Cir. 2009) (five-month delay in reporting harassing conduct unreasonable).

In sum, Dollar General has carried its burden on the *Faragher-Ellerth* affirmative defense and is entitled to summary judgment on Woodford's Title VII sexual harassment claim (Count 3).

**III. ADA Disability-based Discrimination (Count 1) and Harassment (Count 2)**

Woodford's Complaint advanced two claims under the ADA: an ADA disability-based discrimination claim (Count 1) and an ADA disability-based harassment claim (Count 2). Significantly, Woodford did not devote any space to either of these claims in her response brief (*see* Doc. 58). In fact, Woodford admitted in response to Dollar General's Statement of Facts that she is no longer pursuing a disability-based harassment claim against Dollar General (Doc. 58, p. 4) (admitting SUMF 13). Given Woodford's admissions, she has effectively abandoned her ADA disability-based harassment claim and Dollar General is entitled to summary judgment on this claim. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) ("In her response to [defendant's] motion for

summary judgment, [plaintiff] failed to defend her claim against these arguments. She therefore abandoned the claim."); *Williams v. Vill. of Maywood*, No. 13-CV-8001, 2016 WL 4765707, at *5 (N.D. Ill. Sept. 13, 2016) (granting summary judgment as to abandoned claims and analyzing only those claims plaintiff defended in her response brief to defendant's motion).

As to the ADA disability-based discrimination claim, the Court believes Plaintiff has effectively abandoned this claim as well and that Dollar General is entitled to summary judgment given that Woodford did not even respond to any arguments advanced by Dollar General. However, Plaintiff did not specifically admit as much as she did with the harassment claim, so out of an abundance of caution, the Court will briefly touch on why this claim fails as well.

Plaintiff "must show all three of the following elements: (1) that [she] is disabled within the meaning of the ADA, (2) that [she] is qualified to perform the essential functions of [her] job either with or without reasonable accommodation, and (3) that [she] suffered from an adverse employment action because of his disability." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). *See also Monroe v. Indiana Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) ("To establish the third prong and survive summary judgment, a plaintiff must show a genuine issue of material fact exists regarding whether his disability was the 'but for' reason for the adverse action[.]"). Here, Woodford filed a Complaint for disability discrimination based on her disabilities of ADHD, bipolar disorder, and PTSD (Doc. 1, pp. 3). However, during her deposition, Woodford claimed that the only disability she could base her discrimination claim on is

a learning disability and not the disabilities that she listed in her Complaint (Doc. 63-1, pp. 45-46). Notably, Woodford did not clarify this discrepancy in her response brief, nor did she offer any argument, explanation or identify any evidence from which the Court could conclude that she is disabled within the meaning of the ADA. Indeed, "[w]hether a person has a disability under the ADA is an individualized inquiry." *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008) (*quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)). In opposing a motion for summary judgment, the plaintiff must "come forward with evidence that indicates she could meet her ultimate burden of showing an ADA recognized disability." *DePaoli v. Abbott Laboratories*, 140 F.3d 668, 672 (7th Cir. 1998). Here, Woodford has failed to identify any evidence or make any argument that would allow the Court to conduct the individualized inquiry to determine whether Woodford is disabled within the meaning of the ADA. Accordingly, on this record Woodford's claim fails.

Moreover, there is no evidence from which the Court could conclude that Woodford suffered an adverse employment action because of her disability. Rather, the Court has already concluded that Woodford did not suffer an adverse employment action. And when Woodford was asked why her employment ended with Dollar General, she said she believed it was because she called HR (Doc. 63-1, pp. 85). By her own testimony, she is not even contending that her employment ended with Dollar General as a result of any disability.

In sum, Dollar General is entitled to summary judgment on Woodford's ADA disability-based discrimination and retaliation claims (Counts 1 and 2).

## IV. IWPCA Claim for Unpaid Wages (Count 6)

"The IWPCA provides employees with a cause of action against employers for the timely and complete payment of earned wages." 820 ILCS § 115/3; *Enger v. Chicago Carriage Cab Corp.* 812 F.3d 565, 568 (7th Cir. 2016). According to the IWPCA, "[a]ll wage earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4.

Dollar General argues that Woodford's IWCPA claim fails as a matter of law because Woodford did not establish that she had an applicable employment contract supporting her IWPCA claim, and that Woodford timely received her last paycheck, and thus was paid for all the hours she worked at Dollar General. Woodford responds by offering a perfunctory argument that Dollar General failed to apply the correct legal standard. Woodford conspicuously fails to elaborate on this contention. *See United States v. Cisneros*, 846 F.3d 972 (7th Cir. 2017) ("We have repeatedly and consistently held that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (quotations omitted). Nevertheless, the Court will explain why this claim likewise fails.

In her deposition, Woodford acknowledged that she did not have reason to dispute her pay stub (Doc. 63-1, pp. 66, 67). And in fact, Woodford admitted to Dollar General's Statement of Facts that she was an at-will employee, without an employment contract, and that she timely received her last paycheck and received pay for all hours worked at Dollar General (*See* Doc. 58, p. 15) (admitting SUMF 60). Accordingly,

Woodford's IWPCA claims fails as a matter of law. *Enger*, 812 F.3d at 569 (IWCPA claim fails because plaintiff cannot demonstrate that defendant owes plaintiff any outstanding wages). Dollar General is thus entitled to summary judgment on Woodford's IWCPA claim.

## Conclusion

For the reasons outlined above, Dollar General's Motion for Summary Judgment (Doc. 51) is **GRANTED** in its entirety. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant DG Retail, LLC d/b/a Dollar General and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 30, 2026**

Mark A. Beatty

**MARK A. BEATTY**
**United States Magistrate Judge**